UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**WILLIAM CARR,**

        Plaintiff,

   **v.**

**CAROLYN COLVIN, Acting Commissioner, Social Security Administration,**

        Defendant.

Case No. 3:14-cv-01486-ST

**OPINION AND ORDER**

**STEWART, Magistrate Judge:**

## INTRODUCTION

Plaintiff, William Carr ("Carr"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 USC §§ 401-433, and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 USC §§ 1381-1383f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 USC §§ 405(g) and 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgments in this case in accordance with FRCP 73 and 28 USC § 686(c) (docket #6).

Because the Commissioner's decision is supported by substantial evidence, it is AFFIRMED.

1 – OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Carr protectively filed for DIB and SSI on August 30, 2010, alleging a disability onset date of May 30, 2009. Tr. 186-97. Carr's applications were denied initially and on reconsideration. Tr. 115-32. On January 4, 2013, a hearing was held before Administrative Law Judge ("ALJ") David DeLaittre. Tr. 38-54. The ALJ issued a decision on February 4, 2013, finding Carr not disabled. Tr. 17-31. The Appeals Council denied a request for review on July 17, 2014. Tr. 1-5. Therefore, the ALJ's decision is the Commissioner's final decision subject to review by this court. 20 CFR § 410.670a.

## BACKGROUND

Born in 1956, Carr was 57 years old at the time of the hearing before the ALJ. Tr. 186. Carr has a high school education and past relevant work experience as an auto parts salesman. Tr. 42, 219-20. Carr alleges that he has been unable to work since May 30, 2009, due to the combined impairments of depression, anxiety, PTSD, and a traumatic brain injury ("TBI") from a motor vehicle accident in 1996. Tr. 211, 229, 269.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(i)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled under the meaning of the Act. 20 CFR §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii) & (c), 416.909, 416.920(a)(4)(ii) & (c). Absent a severe impairment, the claimant is not disabled. *Id*.

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d); 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing of Impairments"). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

However, the payment of benefits is prohibited when drug and alcohol use is a material factor in a claimant's disability. 42 USC §§ 423(d)(2)(C), 1382c(a)(3)(j); 20 CFR § 416.936. An ALJ must conduct a drug and alcohol analysis ("DAA") by determining which of the claimant's disabling factors would remain if the claimant stopped using drugs or alcohol. 20 CFR § 414.1535(b). If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied. *Id*; *Parra*, 481 F3d at 745. The claimant bears the burden of proving that substance abuse is not a material contributing factor to the alleged disability. *Parra*, 481 F3d at 745. To carry this burden, the claimant must offer evidence that the disabling effects of his impairments would have remained had he stopped abusing drugs or alcohol. *Id* at 748-49. Evidence that is inconclusive does not satisfy this burden. *Id*.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments. 20 CFR

3 – OPINION AND ORDER

§§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 CFR §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e). If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy. 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g); *Bowen v. Yuckert*, 482 US 137, 142 (1987); *Tackett*, 180 F3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC. *Id*. If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g), 416.960(c).

## ALJ'S FINDINGS

At step one, the ALJ concluded that Carr has not engaged in substantial gainful activity since May 30, 2009, the alleged onset date. Tr. 19.

At step two, the ALJ concluded that Carr has the severe impairments of depressive disorder, anxiety disorder, and alcohol abuse. Tr. 20.

At step three, the ALJ found that Carr's impairments, taking his substance abuse disorder into consideration, met the criteria of Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorders). However, conducting the DAA, the ALJ found that factoring out the impact of his substance abuse, the remaining limitations would not cause more than a minimal impact on Carr's ability to perform basic work activities. Tr. 23.

Accordingly, the ALJ determined that Carr was not disabled at any time through the date of the decision and did not proceed to steps four and five. Tr. 31.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F3d 1194, 1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir 2007). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F3d 1035, 1038 (9th Cir 2008), quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004).

## DISCUSSION

Carr argues the ALJ erred because the record demonstrates that he has impairments which would continue to be severe in the absence of his alcohol use. In particular, Carr contends the ALJ erred in his DAA analysis by improperly: (1) finding him not credible; (2) rejecting the opinion of his treating physician, Charles N. Buser, M.D.; and (3) rejecting the opinion of his examining psychologist, James E. Bryan, Ph.D.

**I.    Carr's Credibility**

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms.

*Vasquez v. Astrue*, 572 F3d 586, 591 (9th Cir 2009).  First the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F3d 1036.  Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*, quoting *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996).[1]

The ALJ found that Carr's statements regarding his symptoms and limitations while using alcohol were credible.  Tr. 21.  The ALJ also found that if Carr stopped the substance abuse, his medically determinable impairments could reasonably be expected to produce the alleged symptoms.  Tr. 24.  However, the ALJ found that Carr's statements concerning the intensity, persistence, and limiting effects of his symptoms when sober were not credible "because they are inconsistent with finding that [Carr] has no severe impairment or combination of impairments."  Tr. 25.  In so finding, the ALJ noted a "paucity of purely objective findings" regarding Carr's impairments in the absence of substance abuse.[2]  Tr. 23.  Nonetheless, the ALJ gave a number of reasons why Carr's alleged symptoms when sober are not supported by the record, including clinical observations, inconsistent statements, and Carr's criminal history.  As discussed below, those reasons are clear and convincing.

Although Carr alleged disabling mental impairments from his 1996 motor vehicle accident, the ALJ noted that he "continued to work at levels consistent with substantial gainful

---

[1] Although the Commissioner disagrees with this standard, this court is obligated to follow the rulings of the Ninth Circuit.
[2] Indeed, with the exception of the time period when Carr was undergoing inpatient rehabilitation treatment at Bridgeway Recovery from January through April of 2012, it is difficult to ascertain from the record the true amount of time that he was abstaining from alcohol use.  At the hearing before the ALJ on January 4, 2013, Carr testified that he had been sober since January 17, 2012.  Tr. 43.  During office visits with Dr. Buser from September through December of 2012, however, Carr reported to Dr. Buser that he was drinking two to three large cans of "24 oz. high gravity beer" per week.  Tr. 536, 539, 550, 569, 587, 650.

activity, for approximately 13 years after this injury." Tr. 25.  He added that the record contained "no evidence of any special accommodations" during this period; to the contrary, Carr "wrote that he was a highly sought-after employee by several GM dealerships for his skills as an auto parts salesman." *Id*, citing Tr. 245.  Moreover, no disabling physical or mental impairment caused him to leave his employment; he was terminated for theft. *Id*.  The ALJ also noted that, when sober,[3] Carr had been able to work with a Salvation Army program and perform volunteer work with a food bank. *Id*.  Activities that are inconsistent with alleged symptoms are a relevant credibility consideration. *Rollins v. Massanari*, 261 F3d 853, 857 (9th Cir 2001).  Although the Salvation Army and food bank work was not substantial gainful activity, it nonetheless indicates a greater level of activity than Carr alleges he is capable of performing.

Carr contends that the ALJ ignored portions of the medical records showing that he has grown progressively worse since 1996 due to degenerative changes in both his knee and brain which persist even when not using alcohol.  However, as discussed below, the medical records do not support that contention.

In addition, the ALJ appropriately found that Carr's criminal conviction for theft undermined his credibility.  Tr. 25.  *See Albidrez v. Astrue*, 504 F Supp2d 814, 822 (CD Cal 2007) (the ALJ may use ordinary techniques of credibility evaluation, such as considering a claimant's reputation for truthfulness, including any convictions for crimes involving dishonesty). Although Carr denies that he committed theft and believes that the accusation was unfair (Tr. 312, 473, 475),[4] no medical provider blames his conviction on his mental impairment in the absence of alcohol use, as Carr suggests.

---

[3] This period of sobriety apparently occurred from late 2010 into early 2011.  *See* Tr. 229-30, 242, 315-16.
[4] Despite his repeated denials, Carr admits in his Pain & Fatigue Questionnaire that he "stole from my work for money for alcohol." Tr. 238.

7 – OPINION AND ORDER

The ALJ cited references in Carr's medical record that do not support his claims of extreme symptoms and impairments when sober. In March 2012, when Carr had been sober for approximately two months, his treating counselor, Debra Sherman, noted that his "level of participation and engagement with his written assignments has been exceptional." Tr. 25, citing Tr. 338. She further noted that Carr would "be looking for employment" which he believed was the main reason for conflict in his marriage. *Id*. The ALJ concluded that " [s]uch statements are notably inconsistent with [Carr's] allegations that impairments prevent him from functioning." *Id*.

Carr disagrees with this selective reliance on Ms. Sherman's summary note because it is contradicted by the actual weekly service notes describing only "medium" levels of participation. Tr. 361-63. The weekly notes dated February 8, 15, and 22, 2012, do state that Carr's level of participation in individual groups was "medium" and on February 8 and 15, 2012, that his progress towards individual treatment goals was "medium." *Id.* However, by February 22, 2012, his progress was "high" and by the last session on March 22, 2012, his level of participation was "medium to high" with full completion of his written assignments and goals. Tr. 355. Therefore, the weekly notes do not contradict Ms. Sherman's summary note at the successful conclusion of his counseling.

Finally, the ALJ noted several "unguarded statements" made by Carr to treating providers as inconsistent with his allegations of disabling impairments. Tr. 25. These included a February 2012 discussion with his counselor of "his internal conflict with going back to school vs. seeking Social Security," a statement to his counselor "that he had wanted to return to school for a couple of years but had not been able to stay sober," and his report "that he was interested in becoming an addictions counselor." Tr. 25, citing Tr. 359, 362. Carr also told his counselor that it was

"just hard to find a job at my age with my felony." *Id*, citing Tr. 357. The ALJ noted that during his December 17, 2012 appointment with his treating physician, Dr. Buser, Carr reported that he continued to see a mental health counselor and that his mood had improved. *Id*, citing Tr. 658.

Carr takes issue with the ALJ's reliance on Ms. Sherman's summary note that he was "considering attending the local college" (Tr. 338) because Ms. Sherman was the person who mentioned college. Tr. 359 ("so [I] encouraged him to consider going back to a community college as he has stated that he would be interested in becoming an addictions counselor"). However, at an earlier session, Carr stated his desire to go back to school "for a couple of years but he ha[d] not been able to stay sober." Tr. 362. Therefore, the counselor did not invent Carr's desire to attend college.

In light of this evidence, the ALJ concluded that Carr's "statements to his treating providers are not consistent with his testimony in pursuit of disability benefits." Tr. 26. "Rather [his] allegations of disabling impairments are highly suggestive of secondary gain, which further diminishes his credibility." *Id*. Because the ALJ provided clear and convincing reasons supported by substantial evidence in the record to support this finding, he did not err.

## II. Treating and Examining Providers

### A. Legal Standard

Disability opinions are reserved for the Commissioner. 20 CFR §§ 404.1527(e)(1), 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995). The ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Orn v. Astrue*, 495 F3d 625, 632 (9th Cir 2007). If a treating or examining physician's opinion is not contradicted by

another physician, the ALJ may reject it only for clear and convincing reasons. *Id* (treating physician); *Widmark v. Barnhart*, 454 F3d 1063, 1067 (9th Cir 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F3d at 632; *Widmark*, 454 F3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F3d at 1066 n2. In addition, the ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).

### B. Dr. Buser

After treating Carr for three months "focusing on depression/PTSD," Dr. Buser completed a questionnaire provided by Carr's attorney in December 2012. Tr. 638-41. Despite his focused treatment, Dr. Buser opined that Carr could only carry less than 10 pounds occasionally or frequently, could stand for only 15 minutes at one time up to a total of 3 hours in an 8-hour workday, and could sit for 2 hours at a time, up to 6 hours in an 8-hour workday. Tr. 639. He wrote that Carr needed frequent rest and position changes to relieve symptoms of pain in his lower and upper extremities and that he was limited in his ability to push and pull, including the operation of hand and foot controls. *Id.* Dr. Buser added that Carr's dizziness/unsteadiness limits his pace, and that his pain, mood, and unsteadiness will affect his ability to have sustained periods of concentration. Tr. 640-41.

With respect to Carr's mental status, Dr. Buser opined that Carr's "depression limits his persistence/concentration" and makes "social situations markedly difficult." Tr. 640. Dr. Buser declined to estimate the percentage of an average workweek that Carr's attention and

concentration would be impaired to such a degree that he could not be expected to perform even simple work tasks. Tr. 641. He did, however, write that he expected Carr to miss the equivalent of two or more full workdays a month because Carr's "mood (depression) or pain may become exacerbated requiring him to miss work." *Id.*

In his DAA analysis, the ALJ gave "little weight" to Dr. Buser's opinion. Tr. 28. As discussed below, Dr. Buser's opinion is contradicted by opinions of other examining physicians. Therefore, the ALJ was required to provide specific and legitimate reasons for rejecting it. *Orn*, 495 F3d at 632.

With respect to Carr's physical limitations, the ALJ found that Dr. Buser's opinion was "inconsistent with the unremarkable objective findings during [Carr's] comprehensive consultative physical examination with" Kim Webster, M.D. Tr. 326-31. After examining Carr on June 1, 2011, Dr. Webster found no objective evidence to support limitations on sitting, standing, walking, or lifting, or for postural, manipulative, visual, communicative, or environmental restrictions. Tr. 331. That opinion was confirmed upon a review of the records in June 2011 by Sharon Eder, M.D., and James L. Greco, M.D. Tr. 25, citing Tr. 100-14, 337.

Carr contests the accuracy of Dr. Webster's musculoskeletal examination because she did not consider Carr's TBI and degenerative atrophy or review the MRI. However, the record is devoid of medical evidence of any adverse effect of TBI or degenerative atrophy on Carr's physical abilities. In any event, Carr told Dr. Webster of his current complaints, including balance problems, depression and anxiety, and decreased memory. Tr. 327. Therefore, her evaluation is not suspect.

In addition, the ALJ found that Dr. Buser's opinion as to Carr's physical limitations was "based on [Carr's] subjective complaints and self-reports, "rather than any objective clinical

findings." *Id*. An ALJ may discredit a treating physician's opinion if it is largely based on uncritically accepted, incredible, and subjective claimant reports rather than objective medical findings. *Cotton v. Astrue*, 374 F App'x 769, 771 (9th Cir 2010); *see also Morgan v. Comm'r of Soc. Sec.*, 169 F3d 595, 600-02 (9th Cir 1999) (the opinion of a physician that is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been 'properly discounted'").

Dr. Buser's opinion regarding Carr's mental impairments is contradicted by a psychologist, Sandra Lundblad, Psy.D., and psychiatrist, Carole Rosanova, M.D., based on their earlier review of the medical record in June 2011. Tr. 111, 332. As reasons to reject Dr. Buser's opinion that Carr's depression limited his concentration, the ALJ stated that it was "not consistent with treatment records" or with Carr's test results on a mental status examination performed by Dr. Bryan. Tr. 28, citing Tr. 311-19, 649-71. In particular, he noted that "during a routine appointment in December 2012," the same month Dr. Buser completed the questionnaire, Carr "told Dr. Buser that he did not have any problems with his prescribed medications, and his mood had improved." *Id*, citing Tr. 658. In addition, the ALJ noted that Dr. Buser's opinion was inconsistent with "his contemporaneous interpretation of [Carr's] MRI, which he indicated was 'normal' for [Carr's] age." *Id*, citing Tr. 647.

Carr contends that the ALJ erred by ignoring medical evidence of his overall diagnostic picture of degenerative mental changes stemming from his 1996 head injury. In support, he points to the fact that Dr. Buser found his symptoms sufficiently severe to warrant an MRI and an evaluation by a neurologist. Tr. 657. However, Dr. Buser recommended an MRI based solely on Carr's self-reported symptoms of unsteadiness and occasional falls, "[n]o obvious focal findings on neuro exam to suggest stroke," and the 1996 head injury. Tr. 653. Contrary to

12 – OPINION AND ORDER

Carr's suggestion, Dr. Buser considered the possibility that Carr may suffer degenerative changes due to his 1996 TBI, but never came to that conclusion.

The MRI revealed "mild to moderate age-related atrophy and minimal white matter signal abnormalities with microvascular ischemia." Tr. 668. Carr misinterprets the MRI as an objective finding of a worsening TBI. To the contrary, on December 18, 2012, Dr. Buser interpreted the MRI as "normal" for Carr's age with "no findings to explain [his] current symptoms." Tr. 647. Given that he had no changes to his brain, Dr. Buser concluded that "we still need to figure out why you are having these symptoms." *Id.*

Carr further argues that Dr. Buser's opinion was consistent with the treatment notes of Raymond Baculi, M.D. However, Dr. Baculi's treatment notes are dated a year earlier on December 9, 2011, and are supported primarily by Carr's subjective reports, as opposed to any objective medical findings. Tr. 446-47.

Despite his improved mood as noted by the ALJ, Carr contends that he remained severely impaired mentally. He points to Dr. Buser's September 12, 2012 note which attributed his improved mood to starting Fluoxetine and stated that his "affect and PHQ[-]9 seem incongruent at today's office visit" when his PHQ-9 was "elevated at 26." Tr. 598. The PHQ-9 is a nine-item depression scale of the Patient Health Questionnaire. Thus, Dr. Buser's reference to the PHQ-9 is to Carr's self-reporting of his symptoms, not a medical finding as to the severity of the limitations resulting from Carr's depression and anxiety.

Carr also complains that the ALJ erred by rejecting Dr. Buser's opinion based on his improved mood at one visit. However, Dr. Buser saw Carr on several occasions when Carr reported an improved mood in September and October (Tr. 573, 594), more agitation in November (Tr. 557), and an improved mood again in December 2012. Tr. 668.

Because the ALJ gave specific and legitimate reasons supported by substantial evidence in the record for assigning little weight to Dr. Buser's opinion, he did not err.

### C. Dr. Bryan

Carr met with Dr. Bryan in January 2011 for a psychological evaluation. Tr. 311-19. The ALJ provided a lengthy summary of that evaluation, starting with Carr's complaints:

> [Carr] told Dr. Bryan that he experienced anxiety with intermittent panic, anger at coworkers, memory deficits, and difficulties with organization, due to his 1996 head injury from a motor vehicle accident. [Carr] also told Dr. Bryan that he was dependent on alcohol, particularly during times of stress. [Carr] reported symptoms of anger, impatience, fatigue, lack of stamina, insomnia, ruminative worry, decreased appetite, loss of interest in previously enjoyed activities, sadness, discouragement, tearfulness, pessimism, and panic attacks including shortness of breath, chest pain, and fearfulness. Despite these numerous symptoms, [Carr] also told Dr. Bryan he had goals of returning to school to become a drug counselor.

Tr. 26, citing Tr. 311-14.

He then summarized Dr. Bryan's observations and conclusions:

> [Carr's] gait was normal with no gross motor abnormalities. In addition, [Carr's] psychomotor pace was within normal limits, and his speech was normal without articulation difficulties. Although [Carr] appeared depressed, Dr. Bryan observed that [his] social manner was open, cordial, and carefully polite and he readily established a working rapport. Dr. Bryan noted that [Carr's] interaction skills were strong and agreeable, without evidence of irritability, impatience, or resistance. Dr. Bryan found only mild difficult in [Carr's] ability to track interview questions, which required occasional interruption and re-direction. Dr. Bryan noted some difficulties on the mental status examination, although he was able to answer a simple math calculation, recall five words with cues, and spell the word "world" correctly forward and backward accurately.
>
> Despite [Carr's] unremarkable presentation and only mild difficulties on the mental status examination, Dr. Bryan opined that [Carr] had debilitating symptoms of depression, panic, and cognitive deficits that were "beyond what would be accounted for by complications of alcohol alone." As a result, Dr. Bryan opined

> that [Carr] would not be expected to meet minimum competitive employment standards because he could not understand and remember instructions, sustain concentration, or engage in appropriate social interaction.

*Id*, citing Tr. 316-18.

In his DAA analysis, the ALJ afforded Dr. Bryan's opinion "little weight" because it: (1) "is not internally consistent with the objective observations and clinical findings from the evaluation;" (2) "relies heavily on the subjective reporting of [Carr] who is not a credible source;" and (3) "is also not consistent with [Carr's] overall record, including routine treatment notes, when abstinent from alcohol abuse." Tr. 25-26.

If supported by substantial evidence in the record, all three reasons are sufficient to reject Dr. Bryan's opinion. A discrepancy between a physician's notes and his opinions is a clear and convincing reason for giving little weight to the opinion. *Bayliss*, 427 F3d at 1216. Moreover, as noted, an opinion may be discredited if it is largely based on uncritically accepted, incredible, and subjective claimant reports rather than objective medical findings. *Cotton*, 374 F App'x at 771. Finally, inconsistency with the medical record is a specific, legitimate reason for rejecting a physician's opinion. *Tommasetti*, 533 F3d at 1040.

Carr disagrees with the ALJ's first reason by pointing out that Dr. Bryan's opinion is not inconsistent with his observations of Carr's normal gait, desire to return to school, normal speech, and open social presentation. Instead, he asserts that Dr. Bryan's opinion is based on other findings that the ALJ ignored. However, as noted by the ALJ, those other findings are primarily based on Carr's subjective description of his symptoms, which the ALJ found not credible, and are not consistent with any medical treatment records. Moreover, the record supports the ALJ's conclusion that Carr's presentation to Dr. Bryan was unremarkable with only mild difficulties on the mental status examination.

15 – OPINION AND ORDER

In support of the third reason that Dr. Bryan's opinion was inconsistent with Carr's overall record when abstinent from alcohol abuse, the ALJ cited routine treatment notes from Carr's treatment at Bridgeway Recovery. Tr. 27, citing Tr. 338-444. Those notes indicate that Carr's level of participation in group discussions was uniformly medium to high; his progress toward individual goals was generally high; he completed coping skills for decreasing his depression; his progress was stable; and he timely completed assignments. Tr. 338-444. The ALJ also cited the treatment notes from Carr's routine appointment with Dr. Buser on December 13, 2012, when Carr reported an improved mood, feeling "less cranky," no issues with his medication, and a good relationship with his counselor. Tr. 27, citing Tr. 654. Finally, the ALJ pointed to Dr. Webster's findings only six months after Dr. Bryan's opinion that Carr had no problems with thought process or social interactions during the examination, was alert and oriented, had no problems with communications, and was able to follow both simple and complex commands. *Id*.

Dr. Bryan's opinion as to the severity of Carr's mental impairments "beyond what would be accounted for by complications of alcohol alone" appears to be supported only by Carr's subjective symptoms. Dr. Bryan does mention the 1996 TBI as a prominent risk factor for Carr's cognitive deficits. Tr. 317. However, Dr. Buser found that the December 17, 2012 MRI results were normal for Carr's age with "no findings to explain [his] current symptoms." Tr. 647. He added: "This is reassuring that your [sic] have not had changes to your brain to cause your symptoms but we will need to figure out why you are having these symptoms." *Id*. This conclusion refutes Carr's contention that he suffers from any degeneration of his brain from the 1996 TBI that could support Dr. Bryan's opinion.

In sum, the ALJ provided specific, legitimate reasons to reject Dr. Bryan's opinion.

## **CONCLUSION**

Because Carr has not established that his impairments would be severe in the absence of alcohol use, the ALJ's conclusion that he would not be disabled if he refrained from alcohol use is supported by substantial evidence in the record. Thus, the Commissioner's decision is AFFIRMED.

DATED this 22nd day of October, 2015.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge
